JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| THERESA MINER,<br><br>Plaintiff,<br><br>v.<br><br>L3HARRIS MARITIME POWER AND ENERGY SOLUTIONS, Inc.,<br><br>Defendants. | Case No. SA CV 25-00676-DFM<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND MOTION FOR LEAVE TO AMEND COMPLAINT (Dkts. 11, 19) |

Before the Court are two motions. The first motion before the Court is Plaintiff Theresa Miner's ("Plaintiff") Motion to Remand. See Dkt. 11. Defendant L3Harris Maritime Power and Energy Solutions, Inc. ("L3Harris") opposes the Motion to Remand. See Dkt. 12. Plaintiff filed a Reply in support of the Motion to Remand. See Dkt. 16. The second motion before the Court is Plaintiff's Motion for Leave to Amend the Complaint ("Motion for Leave to Amend"). See Dkt. 19. L3Harris opposes the Motion for Leave to Amend. See Dkt. 20. Plaintiff filed a Reply in support of the Motion for Leave to Amend. See Dkt. 21.

The Court finds these matters suitable for decision without oral argument and the July 8, 2025, hearing is VACATED. See Fed. R. Civ. P. 78; L.R. 7-15. For the reasons set forth below, Plaintiff's Motion to Remand and Motion for Leave to Amend are GRANTED.

## I.  PROCEDURAL BACKGROUND

On January 14, 2025, Plaintiff filed a Complaint in the Orange County Superior Court, naming L3Harris and Does 1-100 as Defendants. <u>See</u> Dkt. 1-1. L3Harris answered the Complaint in the state action on February 18, 2025. <u>See</u> Dkt. 1-6.

On April 3, 2025, L3Harris removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332(a). <u>See</u> Dkt. 1. L3Harris's Notice of Removal alleges that complete diversity of citizenship exists between Plaintiff, a citizen of California, and L3Harris, a citizen of Delaware and Florida. <u>See id.</u> at 4-6. Additionally, L3Harris alleges that the amount in controversy exceeds the $75,000 requirement. <u>See id.</u> at 6-7.

On May 5, 2025, Plaintiff filed a Motion to Remand, seeking to join her former supervisor at L3Harris, Carmen Henry ("Henry"), as a named defendant in this action. <u>See</u> Dkt. 11. Plaintiff contends that joinder of Henry, who is a citizen of California, would destroy diversity between the parties and divest the Court of subject matter jurisdiction. <u>See id.</u> at 3. L3Harris opposes the Motion to Remand, arguing that Plaintiff seeks to fraudulently join Henry to this action. <u>See</u> Dkt. 12.

On May 30, 2025, the Court ordered Plaintiff to file a Motion for Leave to Amend, along with a proposed amended complaint, so it could properly evaluate her claims against Henry. <u>See</u> Dkt. 17. On June 10, 2025, Plaintiff filed a Motion for Leave to Amend, with her proposed First Amended Complaint ("FAC") attached. <u>See</u> Dkt. 19. The allegations in Plaintiff's FAC are described in detail below. L3Harris opposes the Motion for Leave to Amend on the basis that Plaintiff's proposed joinder of Henry is fraudulent and prejudicial. <u>See</u> Dkt. 20.

## II.   ALLEGATIONS IN PROPOSED FAC

Plaintiff was a Second Shift Lead of Manufacturing for L3Harris at its Anaheim, California location from March 2023, through January 2024. See Dkt. 19, Ex. A, FAC ¶ 11, 37. Henry was Plaintiff's direct supervisor. See id. ¶ 29.

In August 2023, Plaintiff developed bilateral carpal tunnel syndrome, which required surgical intervention. See id. ¶ 13. L3Harris approved Plaintiff's disability leave while she underwent and recovered from surgery. See id. ¶ 14. During her leave, however, L3Harris failed to initiate any discussions about accommodations for Plaintiff's return and made no attempt to plan for accommodations despite notice of her restrictions. See id. ¶ 15.

On December 4, 2023, Plaintiff was medically cleared to return to work. See id. ¶ 16. Plaintiff returned to work on December 13, 2023. See id.[1] Plaintiff's doctor provided medical restrictions upon her return to work, including: no lifting more than 8 pounds; no typing more than one hour without mandatory breaks; and a requirement that she be provided an ergonomic workstation evaluation and modifications. See id. ¶ 17. Plaintiff alleges that L3Harris failed to accommodate these medical restrictions by repeatedly assigning tasks requiring her to lift over 8 pounds, removing support staff who assisted with heavy lifting tasks, failing to monitor or ensure compliance with typing breaks, and ignoring requests for an ergonomic workstation evaluation. See id. ¶ 22.[2] Plaintiff raised her concerns to Tresala

---

[1] Plaintiff alleges that L3Harris "unnecessarily delayed her return" to December 13, 2023, by falsely "claiming they had not received disability discharge paperwork." FAC ¶ 16.

[2] According to Plaintiff, L3Harris also "further marginalized" her by denying her necessary computer access to perform her job duties from December 13 through December 21, 2023. FAC ¶ 18.

Wilkerson, a Human Resources Representative at L3Harris, but Wilkerson "deliberately avoided engaging in the interactive process" by responding that it was "not [her] responsibility" to handle Plaintiff's accommodation requests, refusing to coordinate between departments to facilitate Plaintiff's return, deflecting responsibility, failing to document or respond to Plaintiff's repeated requests for an ergonomic evaluation, and ignoring Plaintiff's e-mails and in-person complaints. Id. ¶ 20. Likewise, C.J. Valentine, Human Resources Director at L3Harris, dismissed Plaintiff's complaints about Wilkerson and refused to discuss accommodations. See id. ¶ 25. When Plaintiff complained about these failures, L3Harris engaged in "retaliatory conduct," including increased assignment of tasks exceeding her medical restrictions, a continued refusal to provide reasonable accommodations, and denial or interruption of her meal and rest breaks. Id. ¶ 27.

According to Plaintiff, Henry, as her direct supervisor and a "managing agent" of L3Harris, "exercised broad discretionary authority over Plaintiff's working conditions, including the scheduling and implementation of meal and rest breaks." Id. ¶¶ 28, 29. Specifically, Henry "routinely took uninterrupted breaks for herself while simultaneously directing employees to interrupt Plaintiff's breaks, creating a two-tiered break system that disadvantaged Plaintiff." Id. ¶ 30. Henry also frequently left the premises during her own breaks, which "exacerbated the problem of Plaintiff's interrupted breaks, as employees who would normally seek assistance from [Henry] were instead directed to Plaintiff." Id. ¶ 31. When Plaintiff complained to Henry about her interrupted breaks, Henry responded that "they have no choice" and "failed to take any corrective action to address the issue, despite having the authority to modify break schedules and staffing arrangements." Id. ¶ 32. Henry further failed to ensure premium wages were paid for interrupted or missed break periods and took no corrective action when Plaintiff complained. See id. ¶ 34.

Plaintiff alleges that the denial of proper meal and rest break periods "exacerbated [her] physical condition" by preventing necessary rest periods for her hands, forcing continuous work without proper breaks, and contributing to her physical strain and fatigue. Id. ¶ 35. Ultimately, the "persistent discrimination, retaliation, complete failure to engage in the interactive process and reasonably accommodate Plaintiff's disability, coupled with the meal and rest break violations created an intolerable working environment that left Plaintiff with no choice" but to submit her two weeks' notice and resign on January 3, 2024. Id. ¶ 37.

## III.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). By statute, federal courts have diversity jurisdiction over suits where more than $75,000 is in controversy if the citizenship of each plaintiff is different from that of each defendant. See 28 U.S.C. § 1332(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Generally, Federal Rule of Civil Procedure 15(a) governs leave to amend. See Murphy v. American Gen. Life Ins. Co., 74 F. Supp. 3d 1267, 1278 (C.D. Cal. 2015). "However, where a proposed amendment would add a non-diverse party after removal—thereby precluding existing, diversity jurisdiction—there is greater discretion in determining whether to allow the amendment." Id. In such a situation, courts in the Ninth Circuit have "adopt[ed] the approach of the line of cases applying [28 U.S.C. § 1447(e)] to scrutinize the propriety of a diversity-destroying amendment pursuant to Rule 15(a)." McGrath v. Home Depot, 298 F.R.D. 601, 607 (S.D. Cal. 2014) (collecting cases).

Under section 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Whether to permit joinder of a party that will destroy diversity "is left to the discretion of the district court." <u>Newcombe v. Adolf Coors Co.</u>, 157 F.3d 686, 691 (9th Cir. 1998); <u>see</u> <u>Walker v. Glob. Mail, Inc.</u>, No. 21-6546, 2021 WL 4594024, at *2 (C.D. Cal. Oct. 6, 2021) ("District courts have broad discretion in considering whether to permit a plaintiff to join a non-diverse party under section 1447(e).").

In exercising discretion in considering whether to permit a plaintiff to join a non-diverse party under section 1447(e), courts consider six factors including: "(1) whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would preclude an original action against the new defendants in state court; (3) whether there has been unexplained delay in requesting joinder; (4) whether joinder is intended solely to defeat federal jurisdiction; (5) whether the claims against the new defendant appear valid; and (6) whether denial of joinder will prejudice the plaintiff." <u>IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.</u>, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000). The Court considers each factor in turn below.

## IV. DISCUSSION

### A. <u>Whether Henry Is Needed for Just Adjudication</u>

"Federal Rule of Civil Procedure 19 requires joinder of persons whose absence would preclude the grant of complete relief, or whose absence would impede their ability to protect their interests or would subject any of the parties to the danger of inconsistent obligations." <u>Clinco v. Roberts</u>, 41 F. Supp. 2d 1080, 1082 (C.D. Cal. 1999). However, joinder of a person is not required if it

would destroy subject matter jurisdiction under Rule 19(a). See Lopez v. Gen. Motors Corp., 697 F.2d 1328, 1332 (9th Cir. 1983). Additionally, joinder is not appropriate if the non-diverse defendant whose joinder is sought is only "tangentially related to the cause of action or would not prevent complete relief." Clinco, 41 F. Supp. at 1082.

Here, Henry likely bears more than a tangential relationship to the causes of action in which she is named in the proposed FAC. Miner alleges that Henry "was directly involved in preventing and interrupting [her] meal and rest breaks." FAC ¶ 30. Plaintiff alleges that Henry "routinely took uninterrupted breaks for herself while simultaneously directing employees to interrupt Plaintiff's breaks, creating a two-tiered break system that disadvantaged Plaintiff." Id. When Plaintiff complained to Henry about her interrupted breaks, Plaintiff alleges Henry responded that "'they have no choice' and continued to require Plaintiff's presence during legally mandated breaks." Id. ¶ 32. Henry therefore can be considered directly related to the claimed meal and rest period violations alleged in this action, rather than only tangentially related to those claims. See Crippen v. Int'l Paper Co., No. 23-1107, 2024 WL 1181367, at *4 (E.D. Cal. Mar. 19, 2024) ("In her FAC, plaintiff alleges that [her supervisor] gave her explicit instructions and warnings regarding her break times . . . Based on these allegations, a failure to join could lead to a redundant action filed in a different court, as [plaintiff's supervisor] is not merely tangentially related to the alleged wrongdoing."); Aguilar v. Linn Star Transfer, Inc., No. 19-01162, 2019 WL 2368628, at *3 (N.D. Cal. June 5, 2019) ("[Plaintiff] has at least an arguable basis for a claim against [his supervisor] based almost entirely on the same facts as his claim against [his former employer], and efficiency calls for adjudicating both claims in a single action."). Resolution of these meal and rest period claims would

likely require many of the same documents and witnesses and implicate many of the same factual and legal issues.

Therefore, were joinder denied and Plaintiff required to pursue her claims against Henry in a separate action in state court, that action would be redundant to this lawsuit. Accordingly, this factor weighs in favor of granting the amendment.

**B.    Statute of Limitations**

"If a plaintiff could file an action against the joined defendant in sate court, then there is less reason to permit joinder under § 1447(e)." Clinco, 41 F. Supp. 2d at 1083. Plaintiff does not maintain that her claims against Henry would be time-barred. Accordingly, the Court concludes that this factor does not support joinder.

**C.    Unexplained Delay**

"When determining whether to allow amendment to add a non-diverse party, courts consider whether the amendment was attempted in a timely fashion." Clinco, 41 F. Supp. 2d at 1083. "In particular, courts consider the length of time that passed between plaintiff filing the original complaint and the amended complaint, and whether dispositive motions have been filed." Reyes v. FCA US LLC, No. 20-00833, 2020 WL 7224286, at *5 (E.D. Cal. Dec. 8, 2020). District courts also "generally measure delay from the date of removal to determine whether an unreasonable delay has occurred." Walpert v. Jaguar Land Rover North Am., No. 18-8998, 2018 WL 6855985, at *3 (C.D. Cal. Dec. 17, 2018).

Here, Plaintiff filed her Motion for Leave to Amend on June 10, 2025, which is nearly five months after she filed her original Complaint and just over two months after L3Harris removed this action. This passage of time is not unreasonable where no dispositive motions have been filed in this action, and the parties have not yet engaged in discovery. See Lara v. Bandit Indus., Inc.,

No. 12-02459, 2013 WL 1155523, at *3 (E.D. Cal. Mar. 19, 2013) ("Here, Plaintiffs filed the instant motion five months after filing the initial complaint and three months after the removal. Such delay is not unreasonable under this circuit's precedents."); <u>Yang v. Swissport USA, Inc.</u>, No. 09-03823, 2010 WL 2680800, at *4 (N.D. Cal. Jul. 6, 2010) (allowing amendment nine months after removal where "no dispositive motions have been filed, and the discovery completed thus far [would] be relevant whether the case was litigated in [federal] court or state court"). However, "[u]nder section 1447(e), [the] court has discretion to deny joinder of a party whose identity was ascertainable and thus could have been named in the first complaint." <u>Calderon v. Lowe's Home Ctrs., LLC</u>, No. 15-01140, 2015 WL 3889289, at *5 (C.D. Cal. June 24, 2015) (internal citations and quotation marks omitted). Here, Henry's identity appears to have been ascertainable at the time Plaintiff filed her original Complaint in state court, yet Plaintiff provides no reasonable justification for her delay in seeking to join her.

The Court thus concludes that the time frame of the delay and the fact that this case is still in its early stages weigh towards permitting joinder, but Plaintiff's failure to identify any reason for her delay in naming Henry as a defendant weighs against it. Accordingly, consideration of this factor weighs neutrally.

### D.    <u>Whether Joinder Is Solely for Purpose of Defeating Federal Jurisdiction</u>

"[T]he motive of a plaintiff in seeking the joinder of an additional defendant is relevant to a trial court's decision to grant the plaintiff leave to amend his original complaint." <u>Clinco</u>, 41 F. Supp. 2d at 1083. "[C]ourts have inferred an improper motive where the plaintiff's proposed amended complaint contains only minor or insignificant changes to the original complaint."

<u>Forward-Rossi v. Jaguar Land Rover N. Am.</u>, No. 16-00949, 2016 WL
3396925, at *4 (C.D. Cal. June 13, 2016). However, "[s]uspicion of diversity
destroying amendments is not as important now that § 1447(e) gives courts
more flexibility in dealing with the addition of such defendants." <u>IBC
Aviation</u>, 125 F. Supp. 2d at 1022.

L3Harris argues that the Court should deny joinder of Henry because
Plaintiff's motive is to destroy diversity and secure remand to state court. <u>See</u>
Dkt. 20 at 14-15. The Court agrees that the circumstances of this case suggest
that one of Plaintiff's motivations in amending the Complaint may be to defeat
diversity jurisdiction. However, it is not readily apparent that it is the sole
motivation, particularly where, as explained below, L3Harris has not carried
its burden of proving "that there is absolutely no possibility that the plaintiff
will be able to establish a cause of action" against Henry. <u>Gralnik v. DXC
Tech., Inc.</u>, No. 21-7436, 2021 WL 5203333, at *4 (C.D. Cal. Nov. 8, 2021).

Accordingly, the Court finds that this factor weighs minimally against
permitting joinder.

**E.    <u>Validity of Claim</u>**

"For the purposes of joinder under § 1447(e), a plaintiff's claim need
only be facially viable—the claim need not be plausible nor stated with
particularity." <u>Reyes</u>, 2020 WL 7224286, at *8 (citation omitted); <u>see also
Stout v. Int'l Bus. Machines Corp.</u>, No. 16-4914, 2016 WL 4528958, at *8
(C.D. Cal. Aug. 30, 2016) ("In considering the fifth factor, 'the [c]ourt need
only determine whether the claim seems valid' which is not the same as the
standard in either a motion to dismiss or a motion for summary judgment.")
(citation omitted). "[A] federal court must find that a defendant was properly
joined and remand the case to state court if there is a <u>possibility</u> that a state
court would find that the complaint states a cause of action against any of the

[non-diverse] defendants." Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543, 549 (9th Cir. 2018) (emphasis in original).

Moreover, "[i]n determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." Id. at 548. A defendant may establish fraudulent joinder through: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Hunter v. Phillip Morris USA, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting Smallwood v. Ill. Cent. R. Co., 385 F.3d 568, 573 (5th Cir. 2004)). Under the second method, "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Id. at 1046.

L3Harris argues that Plaintiff seeks to fraudulently join Henry under the second theory, contending Plaintiff cannot establish a cause of action against Henry because "Plaintiff cannot as a matter of law hold Ms. Henry personally liable for any of the alleged wage and hour violations proposed in the First Amended Complaint." Dkt. 20 at 9. In response, Plaintiff maintains that Henry may be liable under California Labor Code § 558.1(a) as a "managing agent" of L3Harris. Dkt. 21 at 2.

The California Labor Code provides that "[a]ny employer or other person acting on behalf of an employer" may be held liable for Labor Code violations. Cal. Labor Code § 558.1(a). Section 558.1 further defines "other person acting on behalf of an employer" to mean someone who "is an owner, director, officer, or managing agent of the employer." Cal. Labor Code § 558.1(b). "Managing agent" in section 558.1 is defined as having the same meaning as "managing agent" in Cal. Civ. Code § 3294. The California Supreme Court has held that a "managing agent" includes "supervisors who

have broad discretionary powers and exercise substantial discretionary authority in the corporation." White v. Ultramar, Inc., 21 Cal. 4th 563, 567 (1999). However, it excludes "supervisors who have no discretionary authority over decisions that ultimately determine corporate policy." Id. This inquiry is "a question of fact for decision on a case-by-case basis." Id.

Here, based on the allegations in the FAC, there is a "possibility that a state court would find" Henry is a "managing agent" of L3Harris under Section 558.1 and is therefore potentially liable as an employer for Plaintiff's claims. Hunter, 582 F.3d at 1046. According to Plaintiff, Henry "exercised broad discretionary authority over Plaintiff's working conditions, including the scheduling and implementation of meal and rest breaks." FAC ¶ 29. Specifically, Henry "routinely took uninterrupted breaks for herself while simultaneously directing employees to interrupt Plaintiff's breaks, creating a two-tiered break system that disadvantaged Plaintiff." Id. ¶ 30. When Plaintiff complained to Henry about her interrupted breaks, Henry "failed to take any corrective action to address the issue, despite having the authority to modify break schedules and staffing arrangements." Id. ¶ 32. Other courts in this circuit have found that a state court may find that similar allegations are sufficient to state a claim against a plaintiff's supervisor in his or her capacity as a "managing agent." See Ramirez v. Quad Graphics, Inc., No. 23-0062, 2023 WL 3254979, at *10 (C.D. Cal. May 4, 2023) (finding state court could "potentially find" allegations that supervisors were "directly responsible for plaintiffs' wages and hours and directly liable pursuant to Labor Code § 558.1" sufficient to state a claim against supervisors in their capacities as "managing agents"); Kendrick v. Mindlance, Inc., No. 23-9037, 2024 WL 709188, at *4-5 (C.D. Cal. Feb. 21, 2024) (finding possible that state court would find senior director of program management a "managing agent" where plaintiff alleged she reported directly to senior director who had authority to bring on

12

employees to the team, senior director "instructed" plaintiff to "record no more than eight hours per workday," and senior director "did not seem to care" when plaintiff "protested" the directive not to record hours); Crippen, 2024 WL 1181367, at *8-9 (concluding claim that supervisor was liable under section 558.1 was not "impossible as a matter of California law," where plaintiff alleged that supervisor "gave her explicit warnings and instructions regarding her breaks and that he was the person who informed her not to report to work.").

Furthermore, L3Harris has not met its heavy burden of demonstrating that Plaintiff seeks to fraudulently join Henry. To carry that burden, L3Harris "must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action" against Henry. Gralnik, 2021 WL 5203333, at *4. L3Harris states that it did so through the declaration of its Operations Manager, Darrell McInroe, which "factually confirms [Henry] is not and was not a managing agent of Defendant L3Harris." Dkt. 20 at 6-7. In relevant part, the McInroe Declaration states:

> Ms. Henry's job title during Ms. Miner's employment and even after, was Supervisor of the Operations Management department. Ms. Henry was one of several supervisors with that job title . . . As a supervisor in the Operations Management Department, Ms. Henry was not responsible for determining corporate policy, nor was she involved in the process of determining corporate policy. No one in that job title at the Anaheim Location has that level of authority. While she was a supervisor who had authority to recommend decisions such as discipline, hiring and firing, she did not have the authority to hire, fire or discipline anyone without approval from others in management or Human Resources. The nature of her job was not one in which she was

involved in corporate decisions that ultimately determined corporate policy. She did not exercise substantial discretionary authority over significant aspects of the company's business.

Dkt. 12-1, Declaration of Darrell McInroe ("McInroe Decl.") ¶¶ 6, 7.

But whether a supervisor is a "managing agent" under Section 558.1 does not turn on whether he or she has the authority to hire or fire employees. See White, 21 Cal. 4th at 577 ("[S]upervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees."); King v. U.S. Bank Nat'l Ass'n, 53 Cal. App. 5th 675, 714 (2020) ("Nor is the fact that [the human resources partner] did not have the authority to terminate an employee . . . dispositive in the managing agent inquiry."). Moreover, courts regularly reject declarations containing similar statements "as insufficient to carry a defendant's burden to show fraudulent joinder in the Section 558.1 context." Abdelmalak v. ReOpen Diagnostics, LLC, No. 24-01365, 2024 WL 4188284, at *5 (C.D. Cal. Sept. 13, 2024) (collecting cases; finding "conclusory" declaration stating that direct supervisor was not an owner, director, or officer of ReOpen, did not exercise substantial discretionary authority over significant aspects of ReOpen's business, and did not have the authority to set or change corporate policy was "insufficient to carry ReOpen's heavy burden to prove that there is absolutely no possibility that the Plaintiff will be able to establish a cause of action" under section 558.1); Kendrick, 2024 WL 709188, at *5 ("Although Defendants submit a declaration from defendant Benjamin, in which she denies the allegations and maintains she does 'not exercise substantial independent authority and judgment in corporate decision making,' . . . the question of an individual's status under Section 558.1 is a question of fact for decision on a case-by-case basis.").

14

L3Harris also argues that the job description for Henry's position at the time of her employment demonstrates she did not have the authority to make corporate policy. See Dkt. 20 at 8. In relevant part, the job description states:

**Supervisory Responsibilities**

Directly supervise employees in Teams. Carries out supervisory responsibilities in accordance with the organization's policies and applicable laws. Responsibilities include interviewing, hiring, and training employees; planning, assigning and directing work; appraising performance; rewarding and disciplining employees; addressing complaints and resolving problems.

McInroe Decl. ¶ 6, Ex. A at 6.

While it is true, as L3Harris points out, that "nowhere does [the job description] state that [Henry] has the authority to make corporate policy or involvement in determining corporate policy," Dkt. 20 at 8, California state case law on this issue makes clear that "the determination of whether certain employees are managing agents does not necessarily hinge on their 'level' in the corporate hierarchy." King, 53 Cal. App. 5th at 713. "Rather, the critical inquiry is the degree of discretion the employees possess in making decisions. An employee exercising authority that results in the ad hoc formulation of policy is a managing agent." Id. at 714. Importantly, "[i]t is what the company does—including through the discretionary acts of its employees—not just what it says in a stated or written policy, that matters." Id. (citing White, 21 Cal. 4th 583 (Mosk, J., concurring)).

In the end, it may be that Henry cannot be held liable for the alleged meal and rest break violations. But courts remand cases even when the potential liability against the purportedly fraudulently joined defendant, "while possible, is actually quite unlikely." Waterman v. Wells Fargo & Co., No. 17-7190, 2018 WL 287171, at *7 (C.D. Cal. Jan. 4, 2018); see Gonzalez v.

Sheraton Operating Corp., No. 20-8785, 2020 WL 7042817, at *2 (C.D. Cal. Dec. 1, 2020) ("While it is fairly clear that Plaintiff's current conclusory allegations would not survive a motion under Rule 12(b)(6), the Court cannot conclude on the record before it that it would be impossible for Plaintiff to rectify the deficiencies in an amended complaint. The determination of whether an individual is a 'managing agent' is a fact-intensive inquiry that does not rely on corporate labels. Carroll was the Executive Chef at the hotel where Plaintiff worked and was Plaintiff's supervisor. It is at least plausible that Carroll could have had the 'broad discretion . . . to implement company policy in a discriminatory or otherwise culpable manner' that would make him a 'managing agent' for the purposes of California Labor Code § 558.1.").

Accordingly, the Court concludes that this factor tips in favor of permitting joinder.

## F.    Prejudice

"In determining whether a plaintiff would suffer prejudice, courts have considered whether denial of leave to amend would require parallel in state and federal court proceedings or would lead the plaintiff to forgo claims against the non-diverse defendants." Murphy v. Am. Gen. Life Ins. Co., 74 F. Supp. 3d 1267, 1286 (C.D. Cal. 2015) (citing cases). "Where claims against parties sought to be joined in an action arise out of the same factual circumstances, it is in the economic benefit of all parties and the judicial system to have the entire controversy adjudicated only once and to force the plaintiffs to proceed with expensive litigation in state court against the putative defendant would create avoidable prejudice." Gonzalez v. Ford Motor Company, No. 21-6764, 2021 WL 4786452, at *4 (C.D. Cal. Oct. 14, 2021).

Here, as discussed above, although there is some evidence indicating that Henry may not be held liable under section 558.1, L3Harris has not shown that Plaintiff cannot possibly state a claim against Henry. See Crippen, 2024

16

WL 1181367, at *8-9 (finding, despite "thin nature" of plaintiff's allegations against supervisor, that this factor tipped slightly in favor of permitting joinder where court was not convinced that there was "no possibility" that plaintiff could prevail on section 558.1 claims). Moreover, if the Court were to deny Plaintiff's motions, Plaintiff may face significant expenses associated with pursuing similar litigation in separate forums. Thus, the Court concludes that this factor weighs in favor of allowing Plaintiff to join Henry as a defendant.

**G.   Conclusion**

On balance, the Court finds the relevant factors weigh in favor of permitting Plaintiff to join Henry as a defendant. Permitting joinder of Henry, who is a California citizen like Plaintiff, destroys the court's diversity jurisdiction. See Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001) ("Section 1332 requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants."). Without complete diversity, the Court must remand this case for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c).

## V.   CONCLUSION

Plaintiff's Motion to Remand (Dkt. 11) and Motion for Leave to Amend (Dkt. 19) are GRANTED. This action shall be remanded to the Superior Court of the State of California for the County of Orange. The Clerk of Court shall send a certified copy of this Order to the state court.

Date: July 2, 2025

DOUGLAS F. McCORMICK
United States Magistrate Judge